Judge Buckner
delivered the opinion of the court.
This was an action of covenant, prosecuted in the name of James Wilson, administrator of Levin Wilson, against Belt and Conway, on an injunction-bond, executed by Belt as principal, and Conway as surety, to said J. Wrilson,on which a judgment for $114 91 cents and costs was recovered. To reverse it, this writ of error is prosecuted.
Upon affidavit,filed by the plaintiffs in error, a rule was entered, demanding of the counsel for Wilson, to produce evidence of his authority for prosecuting the suit. In the affidavit'they state, that from all the information which they had been enabled to obtain, upon diligent inquiry, they believed that Wilson (the defendant in error) was dead; and that the person claiming to be his attorney, had instituted, and was prosecuting the suit wilhout authority. The attorney appeared in obedience to the order of the court,' and the parties having been heard the rule was discharged; to which there was an exception taken, and the evidence spread on the record, by bill of exceptions.
The propriety of that decision is the only point presented, by1 the assignment of errors, which is considered as worthy of notice.
That a lawyer prosecuting a suit should be required to produce satisfactory evidence of his authority todo it, in every' case, where there is reasonable ground to apprehend that he is proceeding without the permission of the individual who stands, on the record, as plaintiff; and that in case of his failure to *496 produce such evidence, the suit should be dismissed} there can be no doubt. The doctrine, however, on this subject, and the reasons on which it is founded, are so fully and clearly laid down in the case of McAlexander vs. Wright, III. Monroe, 189, that it is un» necessary to enter into an additional discussion ox them; and we shall, therefore, only inquire, whether, uPon evidence produced, the circuit court erred 'n discharging the rule. That it did err, is, we think, manifest,
The only evidence offered, of authority, on the Par^ attorney, who was prosecuting the suit, consisted of a written statement made by him, not under oath, and a bill in chancery filed by Belt, one of the plaintiffs in error, against Jones and Whitaker, and Jones’ answer to it; on which bill, or the order of the chancellor thereon, the injunction-bond had been taken, on which this action of covenant is based; to the admissibility of each of which, as evidence, the plaintiffs in error objected.
The attorney acknowledged that he had not been employed, to prosecute the suit, by Wilson; indeed he did not say that he had ever seen, or that he even knew where he resided, or that he was living. He was employed by Whitaker, who acted as the friend of Jones, who, as Whitaker informed him, sat up claim to the debt secured by the injunction-bond, on which the judgment, in this case, was recovered. This, even considering the statement of the lawyer, unsupported by affidavit, as admissible testimony, was obviously insufficient to justify the discharge of the rule. The statements'of the plaintiffs in error, in their affidavit, are not of a character to warrant the conclusion, that James Wilson was dead; yet, that he was dead, was rendered somewhat probable; and the fact, that the lawyer prosecuting the suit, did not state that he had been employed by him ; but acknowledged that he was acting upon the authority, and for the benefit of another, whose claim to the debt stands unsupported by evidence, except the bill and answer, which we shall presently notice more particularly; rendered it improper to discharge the rule, unless they furnish satisfactory proof that Jones was entitled to the money when collected, and consequently authorized to use Wilson’s name.
*497 Objections to the admissibility of the bill and answer referred to, have been urged on the ground that Conway was not a party to that suit; that his interest ought not to he affected by the statements of Belt, made at a lime, when the injunction-bond, on which the present suit is founded, was not in existence; and that the answer of Jones, who is interested in maintaining the authority to sue, was more clearly inadmissible. We, however, deem It unnecessary to decide on these objections, because, admitting both the bill and answer to have been properly received; they are insufficient to establish an authority, on the part of the lawyer, to prosecute the suit.
Belt alleges, in the bill, that in 1807, he had executed a note to Levin Wilson, when they were residents of the state of Maryland; that said Levin, shortly thereafter, departed this life, and that James Wilson administered on his estate, that he, Belt, having removed from Maryland to Kentucky, leaving different persons indebted to him; that in 1811 or 12, he appointed Jones, who was going from this state to Maryland, on business of'iiis own, to collect the debts due to him, Belt; and directed him to discharge and take in for him, with money so to be collected, the note executed to Levin Wilson; that Jones made the necessary collections; but acting faithlessly, purchased the bond, for his own use, from James Wilson, the administrator, with the money collected, as he, Belt, had been informed.
He says, that on Jones’ return to Kentucky, he rested satisfied, that the bond had been destroyed, until in 1828, Jones by Whitaker, had caused suit to be instituted on it before a justice of the peace, and recovered judgment.
It was on the injunction against that judgment, that the bond was executed on which this suit is founded. Jones, in his answer, denies that he purchased the bond with Belt’s money; but says, that he made the purchase of it with ins own property, not from James Wilson, who had previously removed from that state, but from one Burns, with whom, he understood, it had been left to do the best he could with it; Belt being considered, at that time, as insolvent, and that he still continued to be insolvent.
Person, having no other right «ton the mere possession or ¡i b uul, will not b<> permitted to use name of obligee in the proseontion of a suit on it.
*498 Now Belt’s statements respecting the purchase of the note by Jones, for his own benefit, were not made on his own knowledge of facts, but from what he liad heard; and if Jones’ answer be taken as true, he was evidently erroneously informed, as to the person from whom the purchase was made.
Jones’ claim, then, to the debt, as exhibited by himself, comes in too questionable a shape to justify his use of Wilson’s name. He obtained the note from Burns, and as to the nature of Burn’s authority to transfer it, the court had nothing to rely on, except what Jones says he heard, but from whom he does not state; such testimony, if it can be so termed,is not only unsatisfactory, but under the accompanying circumstances, is extremely suspicious.
In 1811 or 12, Jones, as he acknowledges, was appointed the attorney of Beit, to collect money due to him in Maryland; he did make, as' he admits, some small collections, obtained a bond on his principal, from a man who could produce no evidence of his interest in it, except the mere possession of it; credited the bond with the amount which he says he collected for Belt; and having brought it to this state, where Belt lived, kept it from that time until 1828, without any attempt to collect it; and so far as can be ascertained from the record, without any claim set up to it, or a word said about it. Unless, therefore, the bare possession of the bond be sufficient to authorize • the use of the obligee’s name in suing on it, the evidence was clearly insufficient to justify a discharge of the rule.
-That the mere possession of a bond furnishes satisfactory evidence of authority, on the part of the possessor, to use (he name of (he obligee, by prosecuting suit on it; is a position which cannot be reasonably-maintained. A receipt against a bond, executed by one whose authority to do so, depended on his postession only, would be evidently inadmissible testimony, in a suit by the obligee on such bond.
If an obligee be living, the means, by whicji others may obtain the possession of the bond executed to him, and yet have no right to control it, are so various, that ^ W0H^ render the situation ofthembligor extremely *499 awkward, if one, having no evidence of right, except the mere possession of his bond, shall be permitted to use the name of the obligee, in prosecutingsnit against him. But if the ohligee be dead, the danger, in the application of such doctrine, would be still greater. There is not, in this case, the slightest proof, that James Wilson, the administrator, ever liad possession of the bond executed to his intestate; and how Burns got it, we are left to conjecture.
Holt and Conway, for plaintiffs; Crittenden and 7b-bin, for defendants.
The judgment of the circuit court mast be reversed, and the cause remanded, with directions to retry the rule, to produce authority to prosecute the suit; and if sufficient cause be not shewn, to dismiss, the suit for want of such authority.